IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 40519-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALBERTO * LUNA MARTINEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Alberto Luna Martinez appeals his convictions for possession of

fentanyl with intent to deliver, second degree unlawful possession of a firearm,

possession of psilocybin, driving without a valid operator's license, and failure to transfer

title within 45 days. He argues the trial court: (1) erred by denying his motion to

suppress evidence derived from an allegedly unlawful *Terry*[1] frisk, (2) erred by

concluding the search warrant was supported by probable cause and a sufficient nexus,

and by denying suppression of evidence obtained under the warrant, (3) erred by denying

his request for a *Franks*[2] hearing based on alleged intentional omissions from the warrant

affidavit, (4) erred by failing to suppress evidence obtained from the allegedly unlawful

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).
[2] *Franks v. Delaware,* 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

search of a locked cylindrical container found on Luna Martinez's person, (5) violated his right to confrontation by admitting certain testimony, and (6) abused its discretion by admitting alleged opinion on guilt testimony.

We find no error and affirm.

BACKGROUND

These facts are largely drawn from the trial court's unchallenged findings of fact that resulted from the CrR 3.6 hearing after Luna Martinez brought motions to suppress evidence, dismiss the charges, and for a *Franks* hearing.

On September 11, 2023, Detective Tom Beyer, a member of the Walla Walla Regional Drug and Gang Task Force, was patrolling while in uniform in his marked vehicle. Detective Beyer had prior involvement in an investigation earlier that year in which Luna Martinez was found to be in unlawful possession of a firearm and a stolen vehicle, and Detective Beyer knew Luna Martinez had felony convictions for third degree assault and unlawful possession of a firearm.

That afternoon, two other detectives, both in plain clothes, responded to the area of Shelton Road following community complaints of possible drug trafficking activity. One of those detectives informed Detective Beyer that he saw a Hyundai Santa Fe leaving the driveway and believed Luna Martinez was driving with a passenger named Brandon Sharpe. A records check revealed that Luna Martinez lacked a valid driver's license and that Sharpe had an active warrant.

Detective Beyer followed the Hyundai. He observed that the vehicle's registration tabs expired in 2022, and dispatch confirmed the expiration. Detective Beyer activated his emergency lights and initiated a traffic stop. Sharpe immediately exited the vehicle. Detective Beyer recognized Sharpe and ordered him to stop and raise his hands. Because the rear window of the Hyundai was missing, Detective Beyer could see directly into the vehicle and ordered Luna Martinez to remain still. Backup arrived shortly thereafter and took custody of Sharpe.

Detective Beyer approached Luna Martinez, who remained seated in the driver's seat. He observed a machete in the vehicle's center console and Luna Martinez advised that another knife was also in the console area.

Detective Beyer asked Luna Martinez about his license status. Luna Martinez acknowledged that he did not have a license and could not produce photo identification, though he handed Detective Beyer a piece of mail bearing his name.

Detective Beyer directed Luna Martinez to exit the vehicle and conducted a frisk for weapons. Luna Martinez was wearing loose fitting cargo pants. During the frisk, Detective Beyer felt a box that rattled when Detective Beyer shook it. Detective Beyer could see inside the pocket and recognized an ammunition box containing unfired handgun rounds. Based on the presence of ammunition, Detective Beyer believed Luna Martinez likely possessed a firearm.

3

Detective Beyer handcuffed Luna Martinez and placed him under arrest for operating a vehicle without a valid driver's license and without identification. Detective Beyer then searched Luna Martinez incident to this arrest. During the search of his person, Detective Beyer seized the ammunition box, a matching unfired round, and several different containers of various controlled substances.

Because Detective Beyer suspected the Hyundai contained a firearm and additional drug related evidence, he requested that the vehicle be towed to an evidentiary storage facility and he applied for a search warrant. In his warrant application, Detective Beyer specified that he believed there was probable cause to search for evidence related to the crimes of second degree unlawful possession of a firearm and possession of a controlled substance with intent to distribute.

A district court judge subsequently issued a warrant authorizing a search of the Hyundai. The warrant directed law enforcement to search the Hyundai and seize firearms, ammunition, firearm accessories, drug paraphernalia, packing materials, bulk currency, scales, ledger books, financial records and other items associated with a drug transaction, and items and documents establishing dominion and control over the car.

Law enforcement executed the warrant that same day and documented the inventory. Recovered items included: a loaded .380 pistol under the driver's seat, a notebook, a barrel key, a single blue pill and a "baggie" containing pills under the front passenger seat, three additional baggies containing numerous blue pills in a sweatshirt on

4

the front passenger seat, a black cell phone, a melted yellow straw containing multiple pills in the glovebox, four baggies inside a CD case in the driver's side backseat, a blue pill inside a white metal case in the driver's side backseat, a wallet belonging to "Turner Thompson" containing $10 in the backseat driver's side door, and a baggie of psilocybin mushrooms in the driver's side dash compartment. The notebook contained what appeared to be notes about the pricing of fentanyl pills.

When law enforcement opened the cylindrical container seized from Luna Martinez's person, they found 111 additional blue pills. In total, law enforcement found 446 pills from the search of Luna Martinez's person and car.

*Procedure*

The State charged Luna Martinez with possession of fentanyl with intent to deliver, second degree unlawful possession of a firearm, possession of methamphetamine, possession of psilocybin, driving without a valid operator's license, and failure to transfer title within 45 days.

Luna Martinez moved to suppress certain evidence and to dismiss the case. He also requested a *Franks* hearing. Following the hearing,[3] the trial court denied the motions, issuing written findings of fact and conclusions of law.

---

[3] A transcript from this hearing is not included in the record.

The case proceeded to a jury trial. During trial, the State's witnesses testified consistently with the facts above. The trial court made several evidentiary rulings that are raised in this appeal and discussed in more detail below. Luna Martinez testified in his defense. He admitted to being a drug addict but testified that he did not intend to deliver the pills found in the car.

Following trial, the jury found Luna Martinez guilty of all charges except possession of methamphetamine.

Luna Martinez timely appeals.

## ANALYSIS

1.  SCOPE OF FRISK FOR WEAPONS

Luna Martinez contends Detective Beyer's *Terry* frisk for weapons was unconstitutional. He argues the frisk exceeded the permissible scope and that, as a result, the trial court should have suppressed the evidence derived from it. We disagree. The trial court found that Detective Beyer could see the box of ammunition in Luna Martinez's pocket without additional manipulation. Additionally, the ammunition was not seized during the frisk but was seized during the search of Luna Martinez incident to his lawful arrest.

*A. Additional Background*

Relevant to this issue, the trial court entered findings that are unchallenged on appeal. Specifically, the court found that when Detective Beyer approached the vehicle,

6

Luna Martinez confirmed that there was a machete in plain sight and an additional knife in the center console. Dispatch advised that Luna Martinez did not have a license, and he was unable to produce photo identification.

During a pat down frisk for weapons, Detective Beyer felt a box in Luna Martinez's pocket that rattled when shook. The trial court found that Luna Martinez was wearing loose fitting cargo pants and "without additional manipulation after shaking of the pants, Beyer could see inside the pant pocket" and saw a cardboard box with a clear plastic window that he recognized as an ammunition box. Clerk's Papers (CP) at 202. Based on the presence of ammunition, Beyers believed that Luna Martinez possessed a firearm.

Relevant to these findings, the court made several conclusions. The court determined that the initial stop and protective frisk were justified. Prior to the frisk for weapons, Detective Beyer had probable cause to arrest Luna Martinez for the misdemeanor crime of driving without a license. The protective frisk was based on reasonable concerns for safety and was limited in scope to the protective purpose. Detective Beyer ended the protective frisk after feeling the box of ammunition and seeing it without further manipulation of Luna Martinez's pocket. Detective Beyer did not seize the box at that time. COL 2.10. Instead, Detective Beyer arrested Luna Martinez for driving without a valid license and searched Luna Martinez incident to this arrest. Luna Martinez did not challenge the scope of the search incident to arrest. The search incident

to arrest uncovered the bullets, methamphetamine, fentanyl tablets, a black cylindrical container with a locking lid, glass pipe with residue, butane torch, and tooter.[4]

B. *Standard of Review and Legal Principles*

When reviewing the denial of a suppression motion, we determine whether substantial evidence supports the challenged findings of fact and whether those findings support the conclusions of law. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Substantial evidence is evidence enough to persuade a fair-minded person of the truth of the stated premise. *Id*. Unchallenged findings of fact are verities on appeal. *State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997). "We review conclusions of law from an order pertaining to the suppression of evidence de novo." *Garvin*, 166 Wn.2d at 249.

Generally, "warrantless searches and seizures are per se unreasonable, in violation of the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution." *Id*. There are, however, a few exceptions to the warrant requirement, including *Terry* investigative stops. *Id*.

During a *Terry* stop, a police officer may briefly stop and detain an individual for investigation without a warrant if the officer reasonably suspects the person is engaged or about to be engaged in criminal conduct. *State v. Day*, 161 Wn.2d 889, 895, 168 P.3d

---

[4] A smoking device used to ingest or inhale fentanyl.

1265 (2007). During the stop, the officer may briefly frisk the detained individual for weapons they reasonably believe endanger their safety, or that of others. *Id*. To prove a permissible frisk, the State must show (1) the initial stop was legitimate, (2) reasonable safety concerns existed to justify the protective frisk for weapons, and (3) the scope of the frisk was limited to the protective purpose. *See Garvin*, 166 Wn.2d at 250.

If the frisk is determined to be unconstitutional, "'[t]he exclusionary rule mandates suppression of the evidence gathered through unconstitutional means.'" *Garvin*, 166 Wn.2d at 254 (quoting *State v. Duncan*, 146 Wn.2d 166, 176, 43 P.3d 513 (2002)).

### C. Application

Luna Martinez argues that the protective frisk of his person exceeded the permissible scope. Luna Martinez contends that once Detective Beyer concluded the box in Luna Martinez's pocket was not a weapon, he was required to immediately cease his frisk. He asserts that Detective Beyer exceeded the scope by manipulating the pocket and looking inside to see the ammunition.

Luna Martinez's argument relies on the premise that Detective Beyer manipulated his pocket a second time, after the initial frisk. The trial court found otherwise and Luna Martinez does not challenge this finding on appeal, thus it is a verity on appeal. *Broadaway*, 133 Wn.2d at 131. The trial court also found that "Detective Tom Beyer properly ended his frisk after feeling the box of ammunition and presumably noticing the

object was not large enough to be a weapon. By the time Beyer saw the ammunition, the ammunition could be seen without any further manipulation." CP at 209.

While Luna Martinez also contends that Detective Beyer's visual search was unlawful, he cites no authority for this proposition. Where no authority for an assertion is made, we may presume none exists. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Regardless, Luna Martinez cannot show prejudice because the ammunition was not seized as part of the protective frisk but rather as part of the unchallenged search incident to arrest, which was not based on anything found during the frisk. The trial court found that after Detective Beyer ended the frisk, he "did not seize the box [of ammunition] at that time." CP at 209. Instead, the trial court found that the box was seized only after Luna Martinez was placed under arrest and searched incident to that arrest: "Detectives [Joseph] Langlois and Beyer searched Alberto Luna incident to arrest. During the search, Beyer removed the box of ammunition from Luna's pant pocket." CP at 203. Luna Martinez does not challenge these findings. Nor does he challenge the arrest or the evidence seized during the search incident to arrest.

As a result, Luna Martinez's argument fails. There was no evidence to suppress because none was gathered during the protective frisk. Because there was no evidence to suppress from the frisk, the trial court did not err in denying Luna Martinez's motion to suppress.

2. SEARCH WARRANT AFFIDAVIT

Luna Martinez challenges the validity of the search warrant, contending the trial

court erred by denying his motion to suppress the evidence obtained pursuant to it. He

argues the warrant was unsupported by probable cause to search for evidence related to

possession of a controlled substance with intent to deliver. Relatedly, he argues the

warrant to search for firearms was rendered invalid because it was based on evidence

obtained during the unlawful frisk. Last, he contends the warrant was invalid because it

lacked a sufficient nexus between the crimes alleged and the place searched.

*A. Additional Background*

Because Detective Beyer suspected that Luna Martinez's Hyundai contained a

firearm and additional drug related evidence, he applied for a search warrant to search the

car. In his warrant application, Detective Beyer specified that he believed there was

probable cause to search the car for evidence related to the crimes of second degree

unlawful possession of a firearm and possession of a controlled substance with intent to

distribute.[5]

In support of the warrant, Detective Beyer declared that he was working patrol in

uniform on September 11, 2023. At the time, he was aware of complaints of narcotics

---

[5] Although the warrant application and affidavit refer to the crime as "possession of a controlled substance with intent to distribute," the statute uses the term "deliver" instead of "distribute." RCW 69.50.401(1).

trafficking activities on Shelton Road. In response to another officer's radio request, Detective Beyer heard dispatch indicate that Luna Martinez was clear of warrants but not licensed, and Sharpe had a misdemeanor warrant for his arrest. As he arrived in the area, Detective Beyer was advised that Luna Martinez was believed to be driving a vehicle leaving the area with Sharpe in the front passenger seat. Detective Beyer followed the vehicle and stopped it after confirming that its tabs were expired. Detective Beyer confirmed that Luna Martinez was driving and Sharpe was in the passenger seat.

As he approached the driver's door, Detective Beyer observed the handle of a tool near the center console. Luna Martinez acknowledged that the tool was a machete and handed it to Detective Beyer. In response to Detective Meyer's question, Luna Martinez confirmed that there was also a knife in the center console area. Luna Martinez then admitted that he was not licensed to drive and could not produce identification.

Detective Beyer's search warrant application described his knowledge of Luna Martinez's history. Luna Martinez was known to be an 18th Street gang member. He was also suspected of mid-level narcotics trafficking. Finally, based on investigations earlier that year, Detective Beyer knew that Luna Martinez was a convicted felon and had been found in possession of a firearm and stolen vehicle.

Detective Beyer's application also provided his opinion testimony based on his training and experience as a narcotics and gang detective. He noted that gang members

12

are often armed. Likewise, drug dealers often arm themselves to protect against theft and robbery.

Following the pat down frisk, Detective Beyer placed Luna Martinez under arrest and searched his person incident to arrest. The search uncovered handgun ammunition, and several containers of various narcotics and paraphernalia. Based on the discovery of this evidence, Detective Beyer secured the vehicle, had it towed, and sought a search warrant.

A district court judge ultimately issued a warrant authorizing the search. The warrant directed law enforcement to search the Hyundai and seize all: firearms, ammunition, firearm accessories and related items, controlled substances, paraphernalia and items associated with drug use, items and documents establishing dominion and control of the car, and "packing materials, bulk currency, scales, ledger books, financial records, and other items associated with drug transactions." CP at 55.

Prior to trial, Luna Martinez moved to suppress the evidence obtained from the search, in part, because the warrant lacked probable cause and lacked a nexus between the crimes identified in the application and items found in the Hyundai. The trial court denied the motion. Relevant to this issue, the trial court concluded:

> 2.16        Probable cause to search the Hyundai for evidence of unlawful possession of a firearm in the second degree and possession of a controlled substance with intent to distribute was established with the following relevant facts: Luna had been driving the Hyundai and knew of

13

the machete and knife inside the vehicle. Luna, while seated in the car, carried handgun ammunition in his pocket. Luna, while driving the car, bore methamphetamine, Fentanyl laced tablets, a glass smoking device with white residue, a butane torch, a drug tooter, and a black cylindrical container that, when shaken, sounded like pills were inside. The substantial amounts of drugs and paraphernalia on Luna's person created probable cause that more controlled substances would be found inside the Hyundai. The weapons inside the Hyundai and ammunition on Luna's person created probable cause that a firearm would be inside the car.

2.17     These facts also establish an adequate nexus between the Hyundai and the evidence sought by the search warrant. Immediately before the towing of the Hyundai, Luna sat in and drove the car. He knowingly possessed weapons inside the car which suggests that Luna placed the weapons inside the car, and establishes Luna had control and dominion over the car. He also possessed drugs inside the car. As temporary lord over the Hyundai, any of his weapons and controlled substances could be present in the car. The search warrant only sought to search a location wherein Luna had been present at the time of bearing weapons, ammunition, and controlled substances.

2.18     Alberto Luna Martinez's argument that possession of bullets on one's person does not create a nexus to a firearm in a car fails to recognize that he drove the car immediately while bearing bullets and that people possess ammunition not for ammunition's sake but because the ammunition fits in a firearm. Just as important, Detective Beyer knew of Luna unlawfully possessing a firearm in the past. Prior convictions of a suspect are a factor which can be considered in determining whether probable cause exists. *State v. Stone*, 56 Wn. App. 153, 158, 782 P.2d 1093 (1989); *State v. Sterling*, 43 Wn. App. 846, 851, 719 P.2d 1357 (1986).

CP at 211-12.

*B. Legal Principles and Standard of Review*

The Fourth Amendment to the United States Constitution and article I, § 7 of the Washington Constitution require probable cause for a search warrant to be issued. *State v. Lyons*, 174 Wn.2d 354, 359, 275 P.3d 314 (2012). "Probable cause exists if the affidavit in support of the warrant sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched." *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). "Probable cause requires a probability of criminal activity, not a prima facie showing of criminal activity." *State v. Maddox*, 152 Wn.2d 499, 510, 98 P.3d 1199 (2004). The affidavit supporting a search warrant must provide facts that establish a "nexus" between the criminal activity, the place to be searched, and the evidence being sought. *State v. Denham*, 197 Wn.2d 759, 767, 489 P.3d 1138 (2021).

The affidavit supporting the search warrant application "must be based on more than suspicion or mere personal belief that evidence of the crime will be found in the place searched." *State v. Vickers*, 148 Wn.2d 91, 108, 59 P.3d 58 (2002). When determining probable cause, the judicial officer makes a practical, commonsense decision, considering all the circumstances set forth in the affidavit and drawing common sense inferences therefrom. *Maddox*, 152 Wn.2d at 509.

We review the judicial officer's decision to issue a warrant for an abuse of discretion. *Vickers*, 148 Wn.2d at 108. We generally give great deference to the judicial officer and view the supporting affidavit for the warrant with common sense. *Id*. We resolve doubts concerning the existence of probable cause in favor of issuing the warrant. *Id.* at 108-09.

"However, at the suppression hearing the trial court acts in an appellate-like capacity; its review, like ours, is limited to the four corners of the affidavit supporting probable cause." *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). Although we defer to the judicial officer's determination, we review the trial court's assessment of probable cause de novo. *Id*.

*C. Application*

We address Luna Martinez's challenges to the search warrant as they relate to each crime identified in the warrant application: possession of a controlled substance with intent to deliver and unlawful possession of a firearm.

    *i.*       *Possession of a controlled substance with intent to deliver*

Luna Martinez contends the search warrant affidavit failed to set forth facts sufficient to establish probable cause to search for evidence of possession of a controlled substance with intent to deliver. He contends that complaints by unidentified neighbors were not reliable and the remaining facts failed to establish probable cause to believe Luna Martinez was committing the crime of possession with intent to deliver.

We decline to address Luna Martinez's argument that the neighbor complaints were unreliable and law enforcement's suspicions that Luna Martinez was involved in drug trafficking are insufficient to provide probable cause. As the State points out, the trial court's conclusions do not rely on this evidence to find probable cause.

Luna Martinez also argues that while the search warrant application provided probable cause to believe that Luna Martinez was in possession of controlled substances, the application failed to establish probable cause for the crime of distributing controlled substances. Indeed, in the context of reviewing evidence for sufficiency, Washington courts have held that courts cannot infer intent to distribute from mere possession of controlled substances, regardless of quantity, without at least one additional factor indicative of sales. *State v. Brown*, 68 Wn. App. 480, 483-84, 843 P.2d 1098 (1993). Instead, there must be evidence suggesting the intent to deliver instead of mere possession. *State v. Hagler*, 74 Wn. App. 232, 236, 872 P.2d 85 (1994).

Additional factors can include the possession of cash, scales, or sales records.[6] It can also include the possession of weapons when the circumstances indicate the weapons are tied to the delivery of controlled substances. *State v. Nyegaard*, 154 Wn. App. 641,

---

[6] *See, e.g.*, *State v. Hotchkiss*, 1 Wn. App. 2d 275, 281-82, 404 P.3d 629 (2017) ($2,150 in safe next to 8.1 grams of methamphetamine); *State v. Lane*, 56 Wn. App. 286, 297-98, 786 P.2d 277 (1989) (possession of drugs, $850 and a scale supported reasonable inference of sale); *State v. Campos*, 100 Wn. App. 218, 223-24, 998 P.2d 893 (2000) (possession of one ounce of cocaine coupled with $1,750 in cash, a cell phone, and a record of sales supported reasonable inference of sale).

648, 226 P.3d 783 (2010), *vacated on remand*, 172 Wn.2d 1006, 260 P.3d 208 (2011). In

*Nyegaard*, the defendant was found in possession of controlled substances, multiple cell

phones and a firearm. 154 Wn. App. at 648. A passenger in the defendant's vehicle was

carrying a bundle of cash. *Id*. In addition, the State presented testimony that drug dealers

often arm themselves with firearms to protect themselves. *Id*. The court found this

evidence sufficient to support the charge of possession of a controlled substance with

intent to deliver. *Id*. at 649.

Similarly, in this case, the facts presented in the search warrant affidavit include

various controlled substances in various containers along with paraphernalia found on

Luna Martinez's person, weapons in the vehicle, ammunition in his pocket, knowledge

that Luna Martinez had been recently convicted of unlawful possession of a firearm, and

the detective's opinion that drug dealers often carry weapons to protect themselves. This

was sufficient to establish probable cause to search the vehicle for evidence of possession

with the intent to deliver.

ii. *Unlawful possession of a firearm*

Luna Martinez next argues that because the frisk was unlawful, the ammunition

should have been suppressed and should not have been considered by the magistrate,

who was considering the warrant application. He argues the illegal frisk tainted the

search warrant and rendered the search for weapons unlawful. This argument also fails.

As discussed above, the frisk was lawful. Regardless, no evidence was seized as a result

of the frisk; therefore, there was nothing to suppress from the frisk. The ammunition in Luna Martinez's pocket was seized incident to his lawful arrest for operating a motor vehicle without a license. Luna Martinez does not challenge the lawfulness of that arrest nor the search incident to it. Because the ammunition was lawfully obtained independent of the frisk, it was properly considered by the issuing magistrate.

Relatedly, Luna Martinez contends the warrant lacked a sufficient nexus connecting the evidence sought to the vehicle. He emphasizes that no witness reported seeing firearms in the car. We disagree. There was a sufficient nexus between the crime of unlawful possession of a firearm and the car. Luna Martinez had been driving and sitting in the Hyundai immediately before his arrest, he possessed a machete and another knife inside the car, he had handgun ammunition in his pocket while seated in the car, and Detective Beyer knew Luna Martinez to be a convicted felon who had recently been convicted of unlawful possession of a firearm. Taken together, these facts support the reasonable inference that additional weapons, including firearms would be found in the vehicle. Thus, there was a sufficient nexus to search the car for evidence related to unlawful possession of a firearm.

The search warrant affidavit provided probable cause to believe that evidence related to the crime of unlawful possession of a firearm and simple possession of a controlled substance would be found in the vehicle. However, the portion of the warrant

19

permitting a search for evidence related to possession of a controlled substance with

intent to deliver was not supported by probable cause.

3.   *FRANKS* HEARING

Luna Martinez contends the trial court erred by declining to order a *Franks*

hearing based on alleged omissions in Detective Beyer's affidavit in support of the

warrant application.  He argues Detective Beyer intentionally omitted material details

from the affidavit about the extent of the manipulation of Luna Martinez's pants pocket

during the frisk, and that omission allowed the judge to conclude the frisk was less

intrusive than it actually was.  He contends that if the omitted facts were added, the

affidavit would not have supported probable cause to search the car for firearms.

The State responds that Luna Martinez failed to make the substantial preliminary

showing required under *Franks*.  It argues that the minor differences between the

affidavit and the narrative police report do not amount to material or intentional

omissions.

We conclude the trial court did not err in denying the request for a *Franks* hearing.

*A.  Additional Background*

Relevant to this issue, the trial court entered the following unchallenged findings

of fact:

> 1.19      In the affidavit for search warrant, Detective Tom Beyer
> averred that he felt a small square box in Luna's front left pocket.  The box
> was heavy and rattled when Beyer shook it.  Without further manipulation

of the box, Beyer peered inside the pant pocket. He saw a cardboard box with a clear plastic window. Detective Beyer recognized the box as an ammunition box.

1.20     In his field case report, Detective Tom Beyer described his manipulation of the ammunition box, which narrative Alberto Luna contends diverged from the affidavit. In the report, Beyer wrote:

> At the bottom of the pocket, I felt a hard cylindrical object, and above that I felt a small square box, which was notably heavy. As soon as I moved and squeezed the box, I immediately recognized it to be a box of ammunition, as ammunition boxes have a unique size and weight, and produce a unique sound and feel when the rounds rattle within their plastic tray.... Without further manipulation of the pants, I could see into the pocket, and could see a cardboard box with a clear plastic window. I was able to manipulate the box into better view, and confirmed it was an ammunition box, and could see that it was at least partially full of unfired handgun ammunition.

1.21     Detective Tom Beyer's report, unlike the affidavit, read that he manipulated the box a second time before confirming the presence of ammunition.

CP at 205-06.

Related to these findings, the trial court concluded:

2.26  Mr. Luna alleges the difference in the wording of Detective Beyer's affidavit for warrant and field report, (Findings of Fact 1.20, 1.21), meets the threshold required for a *Franks* hearing . . .

2.27  The difference in wording here does not constitute a discrepancy, let alone a material discrepancy. After the second manipulation, according to the report, Detective Tom Beyer "confirmed" the presence of an ammunition box. Confirmation of a fact does not necessarily mean that the person had not concluded the fact existed before the confirmation or vice versa. The narrative report likely only means Beyer confirmed his earlier conclusion of the presence of ammunition.

2.28  There was no misstatement, let alone a material misstatement made with reckless disregard for the truth, and Mr. Luna has not met the required threshold for a *Franks* hearing.

CP at 215-16.

B.  *Legal Principles*

Under the Fourth Amendment to the United States Constitution and article I, § 7 of the Washington Constitution, factual inaccuracies or omissions in a warrant affidavit may invalidate the warrant if the defendant establishes that they are (a) material and (b) made in reckless disregard for the truth.  *State v. Chenoweth*, 160 Wn.2d 454, 462, 479, 158 P.3d 595 (2007).  "A showing of mere negligence or inadvertence is insufficient." *Id*.

Where a defendant makes a "substantial preliminary showing" that officers intentionally or recklessly omitted or misstated a fact in a search warrant affidavit and that this omission or misstatement was material to the determination of probable cause, the trial court must grant the defendant's request for a *Franks* hearing.  *State v. Atchley*, 142 Wn. App. 147, 157-58, 173 P.3d 323 (2007).  A *Franks* hearing allows a criminal defendant to challenge the truthfulness of facts stated in an affidavit supporting a search warrant in a special hearing, but only in limited circumstances.  *Id*. at 157.

If the defendant succeeds in showing an intentional or reckless omission, then the omitted material is considered part of the affidavit.  *Id*. at 158.  If the affidavit then fails

to support a finding of probable cause, the warrant will be held void and the evidence excluded. *State v. Cord*, 103 Wn.2d 361, 367, 693 P.2d 81 (1985).

C. *Application*

The trial court did not err in denying Luna Martinez's request for a *Franks* hearing because he did not make the required substantial preliminary showing of a material omission, or that any alleged omission was intentional.

First, Luna Martinez fails to show an omission. His argument turns on the difference between the frisk description in the affidavit—stating that Detective Beyer peered into the pocket "without further manipulation"—and the statement in the police report that Beyer "was able to manipulate the box into better view, and confirmed it was an ammunition box," after the initial manipulation. CP at 205-06. But as discussed above, the trial court's unchallenged findings undercut this argument. The trial court found that "without additional manipulation" Detective Beyer could see inside the pants pocket and saw the box of ammunition. CP at 202. Thus, there was no omission.

Even if there was an omission, it was not material. Luna Martinez argues that, had the omitted facts been included, the magistrate would have concluded the frisk exceeded its lawful scope, declined to consider the ammunition, and therefore lacked probable cause to authorize a search for firearms. These arguments fail. As discussed above, the ammunition was not seized as a result of the frisk but instead was recovered during a lawful search incident to Luna Martinez's arrest for driving without a valid license.

23

Because the ammunition was lawfully obtained independent of the frisk, its inclusion in the affidavit did not hinge on the scope of the frisk. Accordingly, adding the alleged omission would not have undermined probable cause or altered the magistrate's decision to issue the warrant.

Finally, Luna Martinez fails to show that the alleged omission was intentional. Other than his conclusory argument that "[t]he alleged omission was both material and intentional," he points to no evidence supporting the argument.

4. SEARCH OF LOCKED CONTAINER

Luna Martinez contends law enforcement's search of the cylindrical container found on his person was unlawful and that the evidence obtained during that search should have been suppressed. The State responds, arguing that Luna Martinez waived this issue because he failed to raise it in the trial court. Alternatively, the State argues the search was lawful. We decline to review this issue because it is unpreserved.

Under RAP 2.5(a), we generally decline to review issues that were not raised in the trial court. In this case, defense counsel did not argue that the search of the cylindrical container was an unlawful search nor that the evidence obtained from the search should have been suppressed. As a result, this issue is unpreserved.

5. DETECTIVE BUMP'S TESTIMONY ABOUT THE WALLET

Luna Martinez contends the trial court violated his right to confrontation and various rules of evidence, including ER 602, by allowing Detective Bump to testify about

24

the wallet found in the car and who it belonged to. The State responds that there is no confrontation clause issue because Detective Bump did not give testimonial hearsay and the trial court acted within its discretion by overruling defense counsel's relevance objection.

*A. Additional Background*

The State called Detective Michael Bump, who participated in the search of Luna Martinez's car. Detective Bump testified about his extensive training and experience in drug investigations, including his discussions with drug users and dealers to stay apprised of local drug trends. The prosecutor later asked Detective Bump about a wallet found in Luna Martinez's vehicle:

Q Okay. Thank you. And this is Exhibit No. P56. Where did you—what is this and where did you find it?

A Yes, and seeing the photo it jogged my memory now. So, this was located in the rear passenger—or driver's side but passenger door pocket was a wallet.

Q So, where in the car, which—

A Sorry, on the driver's side, but the rear passenger door pocket. So, the passenger door pocket on the driver's side.

Q Oh, okay. So, okay. And why did you take a photograph of this?

A I opened the wallet and saw that it was somebody else's name in the wallet that was not present on the --

Q Okay.

A —on the scene.

Q Do you know a Turner Thompson—

A I do.

25

Q —in the course of your professional work?

A Yeah, I took the ID out and saw the ID was for Turner Thompson. And there you can kinda see through the little window of the wallet is a Molina Health card was also to a Turner Thompson. And Turner Thompson is someone that I'm familiar with.

Q And how are you familiar with him?

A He's come up in other drug investigations.

Q As—as what, a—

[Defense Counsel]: Objection, relevance.

THE COURT: Sustained.

[The Prosecutor]: May I respond to the relevance?

THE COURT: Let's have a sidebar, please.

[The Prosecutor]: Yeah.

(SIDEBAR)

[The Prosecutor]: So, —

THE COURT: The objection is overruled and you may proceed, Ms. King.

[The Prosecutor]: Thank you.

 . . . .

Q I believe, if I remember correctly, my question was how do you know a Turner Thompson?

A I know him to be addicted to fentanyl.

Q Okay. And how have you come to know that, how did that in the course of your work?

A I've had contact with him on fentanyl based investigations on multiple occasions.

Q All right. And based upon your professional training and experience over the years with drug investigations, why would a—why would someone, a fentanyl dealer, have identification like this of a fentanyl user? Like what—what is the dynamic behind this and—

A I would say probably the most common reason that I've—I've seen—I mean, there I suppose there could be others, but typically they're held as collateral.

Q Can you explain that?

A If somebody, perhaps, doesn't have enough money to purchase what they want then the drug dealer may hold item of value as collateral until that debt is satisfied.

Rep. of Proc. (RP) at 452-54. Following this testimony, during a recess, defense counsel added to her objection, arguing that Detective Bump's statements about Thompson were "hearsay statements about his addiction." RP at 460. The court, overruling the objection, responded:

That we don't know whether Mr. Thompson was an addict. And my response to that is Detective Bump testified to his training and experience in this area. And through that, he - - he learned from users and dealers, and he talked to people. And he would have learned locally about Mr. Thompson and had contact with Mr. Thompson.

And so, for that reason, I think it was allowable.

RP at 461.

*B. Confrontation Clause*

The Sixth Amendment confrontation clause and the Washington Constitution provide that a defendant in a criminal prosecution shall have the right to confront or meet the witnesses against them. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. This clause bars "admission of testimonial statements of a witness who did not appear at trial unless" the witness "was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.

27

Ct. 1354, 158 L. Ed. 2d 177 (2004). We review allegations of confrontation clause violations de novo. *State v. Hall-Haught*, 4 Wn.3d 810, 816, 569 P.3d 315 (2025).

While the confrontation clause protects criminal defendants against testimonial statements from non-testifying defendants, nontestimonial statements are not barred under the confrontation clause. *State v. Wilcoxon*, 185 Wn.2d 324, 334, 373 P.3d 224 (2016) (plurality opinion). Testimonial statements are statements acting in substitute of in-court testimony. *Id*. Examples of testimonial statements include: Affidavits, prior testimony, statements taken under police interrogation, and other pretrial statements that the declarant would reasonably expect to be used in prosecution are all testimonial. *Id*.

Luna Martinez argues the trial court violated his right to confrontation. He seems to argue that Detective Bump's testimony relied on testimonial hearsay from Thompson. Appellant's Br. at 44 ("any statements made by Mr. Turner to the detective came by way of police contact."). We agree with the State that the trial court did not violate the confrontation clause by admitting Detective Bump's testimony because it contained no testimonial hearsay statements made by Thompson.

Luna Martinez's argument presumes that Detective Bump's knowledge of Thompson's drug use must have come from statements made by Thompson during police encounters. But the record contains no such statements. When asked how he knew Thompson to be a fentanyl addict, Detective Bump answered directly that he had "had contact with him on fentanyl based investigations on multiple occasions." RP at 454. He

did not recount anything Thompson said, nor did he describe statements made during those encounters. Instead, he testified to his own observations developed during prior investigations. Because Detective Bump did not relay testimonial hearsay, the confrontation clause is not implicated and there is no confrontation clause violation.

### C. Evidentiary Objections

We review a trial court's evidentiary rulings for abuse of discretion. *State v. Demery*, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001). Only relevant evidence is admissible. ER 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. "[T]he threshold to admit relevant evidence is low and even minimally relevant evidence is admissible." *Kappelman v. Lutz*, 167 Wn.2d 1, 9, 217 P.3d 286 (2009). ER 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

Luna Martinez argues the wallet evidence should have been excluded under ER 401 and ER 402 because the wallet and identification "would only have relevance if the items were actually collateral." Appellant's Br. at 45. He notes the record contains no evidence of how the wallet came to be in the vehicle and no evidence showing it was used as collateral; therefore, he contends the wallet had no ability to prove or disprove an issue in the case. He further argues the testimony violated ER 602 because Detective

Bump did not have firsthand knowledge of how the wallet came to be in the car and therefore could not testify the items were collateral. He characterizes Detective Bump's explanation about collateral as inadmissible speculation.

The State responds that the testimony was relevant because Detective Bump explained a practice he knew from training and experience in drug investigations: dealers sometimes hold users' identification as collateral. The State argues Detective Bump never said the wallet was collateral, acknowledged he did not know how it came to be in the car, and grounded his statements in his professional training and experience. Thus, the State contends the testimony was properly admitted.

We conclude that the trial court did not abuse its discretion in determining the wallet testimony was relevant. ER 401 does not require the State to prove the wallet was collateral before the evidence could be admitted. Rather, evidence is relevant if it has any tendency to make a fact of consequence more or less probable. ER 401. Here, the testimony made it more probable that Luna Martinez possessed the intent to distribute. The wallet belonged to an individual Detective Bump had personally encountered during fentanyl investigations, and Detective Bump explained that, in his experience, identification is sometimes held as collateral in drug transactions. This information provided context for the circumstances in which the wallet was found.

Luna Martinez's ER 602 challenge also fails. Detective Bump did not testify that the wallet was collateral in this case or that he knew how it came to be in the car. He expressly acknowledged he lacked that knowledge. Instead, his testimony was about matters within his personal knowledge: his training and experience working on drug investigations. Because ER 602 requires only evidence sufficient to support a finding of personal knowledge, and the detective testified from his firsthand experience in drug investigations, the trial court acted within its discretion in admitting the testimony.

6. DETECTIVE BUMP'S TESTIMONY ON LACK OF CASH

Luna Martinez contends the trial court violated his constitutional right to a fair trial by admitting Detective Bump's testimony over his objection. He argues Detective Bump's statement—that the lack of cash "does not indicate that there's no way he could be distributing drugs"—was an impermissible opinion on guilt because it conveyed the detective's view that the evidence was sufficient to prove intent to deliver.

We conclude the trial court did not abuse its discretion because the challenged testimony did not constitute an impermissible opinion on guilt.

*A. Additional Background*

During cross-examination of Detective Bump the following exchange occurred:

Q [Defense Counsel:] Okay. 10 bucks. That's about how much cash was found in the car, would you agree? You can answer . . .

A [Detective Bump:] Okay. I know there was $10.00 found in Turner Thompson's wallet.

31

Q Okay. You did not find any other cash though in the car.

A I did not.

Q Okay. Isn't it common for people who are transacting as drug delivery individuals to have cash so that they can provide change? Is that common?

A I've been involved in numerous controlled purchases of drugs. I don't think I've ever received change.

Q Well, no, but—so, you're saying that it's not common at all for people who are involved in drug sales to have cash, large sums of cash on them?

A I don't know that it is common. It depends at what point in the transaction. Had they already sold the drugs, or were they going to sell the drugs. So, yeah, I don't know that it's commonplace to find large sums of—of cash. Like I said, it depends at what point the—it is. So, I have found sums of cash, I have also not found sums of cash.

RP at 473. On redirect examination, the following exchange occurred:

Q [The Prosecutor:]      So, to put it is it fair to say that—based upon your experience in drug investigations, is it fair to say that the absence of large amounts of money in Mr. Luna's car does not mean there's no intent to deliver here?

[Defense counsel]: Objection, speculation. And also, going to the ultimate question for the jury.

THE COURT: It goes to state of mind, so I'll sustain[7] the objection.

Q [The Prosecutor:]      Does—does the lack of large sums of money in Mr. Luna's car mean that there could not be, in your professional opinion, possession with intent to deliver here?

[Defense Counsel]: Objection, same objection.

THE COURT: Overruled.

---

[7] In context, it appears the court misspoke and intended to say that the objection was overruled.

A [Detective Bump:] I would say that the lack of money does not indicate that there's no way he could be distributing drugs. So, as I testified, sometimes we find money, sometimes we don't.

RP at 475.

B. *Standard of Review and Legal Principles*

We review decisions to admit evidence using an abuse of discretion standard. *State v. Demery*, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001).

Opinions on guilt are improper whether made directly or by inference. *State v. Montgomery*, 163 Wn.2d 577, 594, 183 P.3d 267 (2008). "Impermissible opinion testimony regarding the defendant's guilt may be reversible error because such evidence violates the defendant's constitutional right to a jury trial, which includes the independent determination of the facts by the jury." *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007). "Whether testimony constitutes an impermissible opinion on guilt or a permissible opinion embracing an 'ultimate issue' will generally depend on the specific circumstances of each case." *City of Seattle v. Heatley*, 70 Wn. App. 573, 579, 854 P.2d 658 (1993).

Before opinion testimony is offered, the trial court must determine admissibility of the testimony. *Montgomery*, 163 Wn.2d at 591. In making this determination "the court will consider the circumstances of the case, including the following factors: '(1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact.'" *Montgomery*,

163 Wn.2d at 591 (internal quotation marks omitted) (quoting *Demery*, 144 Wn.2d at 759). Some areas, however, are clearly inappropriate for opinion testimony in criminal trials, including personal opinions, particularly expressions of personal belief, as to the defendant's guilt, the intent of the accused, or the veracity of witnesses. *Id*.

However, not all opinion testimony that touches on an ultimate issue at trial is impermissible. *See Heatley*, 70 Wn. App. at 577-79. Instead, the evidence rules provide that certain opinion evidence is permissible even when it embraces an ultimate issue of fact. *See* ER 701, 704. Thus, "testimony that [1] is not a direct comment on the defendant's guilt or on the veracity of a witness, [2] is otherwise helpful to the jury, and [3] is based on inferences from the evidence is not improper opinion testimony." *Heatley*, 70 Wn. App. at 578.

### C. Application

The trial court did not abuse its discretion in overruling defense counsel's objection and admitting Detective Bump's testimony. Viewed in context, Detective Bump's testimony was not an expression of personal belief about Luna Martinez's guilt.

The line of questioning began on cross-examination with the defense's attempt to cast the absence of cash as evidence that Luna Martinez was not a drug dealer. Detective Bump's testimony established that in his investigative experience, sometimes dealers have cash and sometimes they do not, depending on the stage of the transaction. On redirect, the prosecutor asked whether the absence of cash ruled out intent to deliver.

After the court overruled the objection, Detective Bump answered that the lack of money did not foreclose the possibility that Luna Martinez was distributing drugs.

Although Detective Bump's statement related to an ultimate factual issue, it did not cross the line into an impermissible opinion on guilt. Detective Bump's statement was not an expression of an opinion that Luna Martinez *was* distributing drugs or that he had the intent to distribute drugs. Nor did the statement convey that Detective Bump believed the evidence was sufficient to prove that Luna Martinez was guilty. Rather, he in essence stated that, based on his experience, the absence of cash does not rule out drug distribution because in some investigations cash is present and in others it is not. The jury remained fully responsible for determining whether Luna Martinez possessed fentanyl with intent to deliver.

Finding no error, we affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, C.J.

WE CONCUR:

_____        _____
Murphy, J.                                              Cooney, J.

35